IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL CURTIS REYNOLDS,

    PETITIONER,

VS.

UNITED STATES OF AMERICA,

    RESPONDENT.

FILED
SCRANTON
DEC - 7 2009
PER _____
DEPUTY CLERK

DISTRICT CASE # 05:cr-0493

CASE # _____

Judge : Conaboy

## EMERGENCY RELEASE

MOTION UNDER 28 U.S.C. §2241

AND 28 U.S.C. §2243

for immediate release

    Inthat, the enclosed document, the Response Brief of the Government in matter 07-3210, Third Circuit Court of Appeals, clearly states that the Government knowingly arrested this Petitioner, eight months after learning from a certified expert that Petitioner had broken no law that would permit that arrest. Prosecution took place, with uncontested breached Search warrants, coached testimony and perjury at trial. All these facts went uncontested by the Government, and are proven by papers given the Petitioner as Government evidence. Petitioner has been held for four years, two of those due to unlawful acts of a Clerk of the Courts, who attempted to hide a Government failure to rebut the matter in Dec. 2007. The Government has since that time, supplied a Response Brief, in which the mentioned items above are not contested as true facts. The Government themselves admitted the unlawful arrest.

## REMEDY SOUGHT

    Petitioner seeks immediate release from his declared unlawful arrest and conviction, within the 28 U.S.C. §2243 provisions and Rule 23(b), immediate release and (3) release on personal recognizance, without surety bond.

    I, Michael Curtis Reynolds hereby certify under penalty of perjury pursuant to Title 28 U.S.C. §1746 the enclosed as true and correct.

__NOV. 29, 2009__

    DATED :

MICHAEL CURTIS REYNOLDS, PRO SE
PETITIONER

BRIEF IN SUPPORT

Inthat the above Criminal matter, listed as 05-cr-0493, which convicted on July 13,2007, sentenced on Nov. 6, 2009, did so with known perjured Affidavit of Probable Cause, as well as statements before the Grand Jury to obtain those same Indictments, and to Magistrate Mannion to obtain the search warrants, (although the FBI violated that search warrant on 12/12/2005, printing documents from that computer, the warrant issued on **12/21/2005**, **nine days prior to the warrant date**.

Just arrived, from Joseph O'Brien, (attorney that had, on the Telephone Transcript, testified the Prosecution knew of the perjuries), is th Superceding Indictment Grand Jury Transcript. In that document, Joseph Noone, (FBI Agent that perjured at Trial, see EXHIBIT attached), testified to the Grand Jury that the emails sent to the Government 'cooperating witness', Shannen Rossmiller, see EXHIBIT attached, did trace, with the 'assistance of the FBI', the email location as being from 346 Scott Street, Wilkes-Barre, PA. FBI Agent Noone then did a further trace, through the Internet Provider Service, and that Service did verify the emails came from 346 Scott Street, Wilkes-Barre, PA.

The issue is that the FBI also proved that the Petitioner was **not at 346 Scott Street, but 400 Kidder Street, and sent NO EMAILS FROM 400 Kidder Street were ever sent by the Petitioner, thus Petitioner was innocent of any 'email crimes', and FBI knew it, but prosecuted with the aid of John Gurganus in spite of this. As Petitioner is innocent, Petitioner deserved release pending Appeal.** Since Appeal is now a mere foramlity until Acquittal with the evdience, that the Government did not rebut, refute, nor deny, **AND CANNOT DENY**, these are legal facts under FRAP 28(b). Please read the attached EXHIBIT.

HISTORY OF VINDICTIVE PROSECUTION

In determining the Vindictive Prosecution claim in this matter, one must start at the beginning, which in our case, the Government has conceeded this, in the Response Brief, page 37;

> (Tr. 557-58.) Not surprisingly, there being no testimony regarding the quantity of powder in the grenade or whether that quantity was sufficient to cause the grenade to explode, the jury acquitted Defendant of Count 5.

Since the only testimony, that of Sgt. Cody Bergen, was given in his Incident Report of April 23, 2005, some eight months prior to the arrest for this charge, (Count 5 was the original, only Count for arrest of this Petitioner), and on that same page 37, Government even gave us that evidence;

> "A. No. There wasn't enough there to cause---."

SO, the Government admits to knowing, that this was the <u>only testimony they were ever getting on Count 1, (Count 5 at Trial), then they have admitted here, by their own words, that they knowingly arrested for a charge that couldn't be convicted, thus a known false arrest.</u>

But there's more where that came from, since they knowingly used the false statements of Kevin Reardon in the Affidavit of Probable Cause for every arrest, search warrant and Indictment in this case. Should you doubt that they knew, this is the PSI statement that the Government used in sentencing:

| | | | |
|---|---|---|---|
| 143. | 6/7/78 (age 20) | **Arson 2nd Degree / Town** Court, North Salem, NY | 8/14/78: 3 years probation; 8/14/81: probation expired |

Defense Counsel: Anthony Naclerio, Esq.
On June 6, 1978, at approximately 10:15pm, the defendant ~~intentionally~~ **started a fire** at his family's residence with an <u>electronic incendiary device</u> during a time when his <u>parents were at home and asleep in bed.</u>

Then how does Kevin Reardon's story play, seen below, when the file states firstly, **intentionally started a fire**, but Kevin states, "**the explosive device did not detonate**," since to intentionally start a fire, it must have then, 'detonated'. Cannot be true, can it? Secondly, Kevin states, below, "he attempted to connect an explosive device to his father's garage door which was designed to detonate when the garage door opened." Yet the Report states nothing of anything

A    Yes, he said on Michael Reynolds' criminal history he was charged with attempted arson back in the late 1970's. It says here, this is from Reardon, Reardon indicated that when Reynolds was approximately 19 years old he attempted to connect an explosive device to his father's garage door which was designed to detonate when the garage door opened. The explosive device did not detonate, however, the explosive device was discovered by Reynolds' father and reported to law enforcement.  Reynolds was subsequently arrested for Attempted Arson.  Reardon advised this incident occurred in Purdys, Westchester County, New York.

Q    So this was years before?

A    Correct.

Q    Okay.  That certainly was relevant to your investigation of not only the April 23rd incident, but also what was going on in these internet postings, is that right?

A    Yes.

connected to any door, and it does state that it was an "electronic incendiary device", which is clearly not an explosive. That same Report also states that his "parents were at home and asleep in bed." Well, if they are asleep, how did Petitioner's father then, "discover the device and report it to law enfocement." All this on records this FBI and Prosecutor had the entire time, thus they knew they perjured, had no excuse to arrest, and convicted in spite of impossibility on

part of the Petitioner to even  send any emails, see below;

> "Reynolds brought his desktop computer to SACHARZEWSKA's residence
> and connected his computer to <u>SACHARZEWSKA's monitor</u> so he could
> access his computer hard drive."

It doesn't take a Rocket Scientists to figure out that someone did not drive fourteen miles to use a computer monitor, if they already owned one. <u>There was no Computer Monitor for the Desktop Computer, thus no emails could physically be sent from that Computer.</u> Debra Reardon further testified, (please recall that Debra was a Prosecution witness), that there was no internet access while in New York State, from Nov. 20th-24th, while Petitioner was there. Petitioner again, as Debra testified;

> "We went out to buy him a computer monitor at the Salvation Army on
> Nov. 23, 2005."

Thus confirmation from the Prosecution's witnesses, (Justyna  and Debra), that this Petitioner had no computer monitor, and no internet access. In fact, even further proof of this is in the statement from the FBI, (Government EXHIBIT page 116);

> "The forensic examination of the hard drive revealed files depicting
> that REYNOLDS stayed at the motel. "
> "On January 5, 2006, SA Whitehead, (Larry Whitehead), returned the hard
> drive to VEGA."
> (VEGA is the owner of the RED CARPET INN, 400 Kidder Street, Wilkes-Barre,
> PA. The Petitioner stayed there while in PA Nov. 10-16, 2005. Note that
> there is not one phone record on this computer hard drive that proves a
> single internet usage, yet that computer logs all phone calls made. This
> means that while in PA, this Petitioner did not use the internet.)

This Petitioner did not use the internet, as he had no computer Monitor to use it, no phone line to call if he did, and by the very evidence this <u>Government gave and never rebutted at all, could not physically have sent any emails whatsoever prior to Nov. 23, 2005.</u>

JOSEPH O'BRIEN's TELEPHONE TRANSCRIPT

JOSEPH     : Hi Mike, What's on your mind?

PETITIONER : I just got this document from the psychiatrist in MCC, New York. Have you read it yet?

JOSEPH     : Yes, Why?

PETITIONER : There's a part where she discusses the perjury in this case, you read that part?

JOSEPH     : No, why?

PETITIONER : It says the psychiatrist talked to both attorneys about it. Both Attorneys as in two, as in YOU AND JOHN GURGANUS, AND SHE WAS TOLD THE PERJURY NEVER HAPPENED, Did you ever tell her that?

JOSEPH     : No, I didn't.

PETITIONER : So you **never told her that the Prosecutor did not commit perjury?**

JOSEPH     : NO, NEVER.

PETITIONER : And you were in the room when the Prosecutor was told that this was perjured, the **Affidavit of Probable Cause?**

JOSEPH     : Yes,it was.

PETITIONER : So, the Prosecutor did commit perjury to the **Grand Jury** then?

JOSEPH     : **EVERYTIME THAT HE READ IT, YES.**

PETITIONER :  ok then, thanks Joe.

## Electric match construction



**wooden popsickle stick**

**stereo wires**

**hot glue**

**two electric matches**

This document, given to Attorney #1, Isabell Williams gave this to Petitioner on December 15, 2005, at the only meeting she had with Petitioner before she was terminated.

This document, taken from Petitioners computer, has been uploaded to another computer prior to printing. Meaning this was taken from that computer prior to the date below.

Note the computer path of the document, it states it is from Drive E: That computer has no Drive E, It has only a Drive C:, proving this was sent to another computer first, then printed out. The problem is what date it was printed out on. This date preceded the issuance of the search warrant by nine days. Clearly a violation under the Fourth Amendment.

file://E:\Export\_00000FTK\_81000FTK\electric match[95578].JPG

12/12/2005 3:30 PM

FOURTH AMENDMENT SEARCH WARRANT BREECH

In the following documents, mentioned within the Brief, and enclosed in the original Sept. 2007 Brief, is the document drawings, from the computer seized on Dec. 5th, 2005, actually, computers, as there were two of them, a desktop, and a german laptop. The original warrant declared "a computer". This created a problem, as it is not particular enough to say which computer under the requirements for a search warrant. Thus, the Government needed permission to search both computers to get what they, 'suspected' was on them. The issue and legal problem is, that the Government had already uploaded the Hard Drive, C:, from the Petitioner's computer, to a Drvie E:, on another.

**Conclusion**

10.  Your affiant believes, based upon the information above, including the information identified in FBI Agent Larry J. Whitehead's Master Affidavit that has has been incorporated by reference, there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes enumerated above, as particularly described in Attachment B of the Search Warrant Application, will be located on the computers seized from MICHAEL CURTIS REYNOLDS.

11.  Therefore, based upon the foregoing, your affiant seeks authority to search the computers, which were seized from MICHAEL CURTIS REYNOLDS on December 5, 2005.

12.  Your affiant, having signed this addendum under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Joseph F. Noone
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before
me this 21st day of December 2005,
at Wilkes Barre, Pennsylvania.

MALACHY E. MANNION
United States Magistrate Judge

The warrant request is on Dec. 21, 2005, but the drawing was already uploaded prior to Dec. 12/2009, as you will see.

# Ola Whitehead's Testimony

Q.    Now, what did he say it was?

A.    He just said it was a grenade from when he was in the Army.

Q.    Did you ask him any questions about it?

A.    No, I wasn't really interested in it.

Q.    I'm going to show you Government Exhibit 100.13.

A.    Yeah, that's the one.

Q.    That appears to be what you saw?

A.    That is correct.

"I testified, Mike, it killed me to be up there and testify, but I had no choice. I want to explain, but I am too scared to at the same time. I don't know what I can and can't write and what I should and shouldn't write."

"They started to go over the possible questions. All were mostly about the grenade. I had no idea when I saw it, none. They told me to think back hard and I had to guess. When they mentioned times and dates, I didn't remember. So they said would you say it was in this timeline? I said maybe. And somehow it was decided it was before you left. I now know they tricked me into saying that time frame and I'm sorry but I still don't remember when I saw it or why I do know it was in the house. And no, I didn't know who's it was, but I remembered you telling me didn't remember who's. Now I remember clearly. It was Danny's, you told me that."

"I did testify what I believed was the truth and or what I was made to believe was the truth. I would have done so much more different now today then that day. I testified, I'm so sorry. Everything was so intimidating and so scary. I didn't see till afterwards how clueless I was to everything around me. Monday night when I got the call to show up for 11 on tuesday, my life stopped. I was so scarde, scared of seeing you, scared of going there, scared of testifying, scared of looking you in the eye. I felt I was betraying you, but couldn't do anything about it."

Psychological Report

**Criminal History:**

Mr. Reynolds reported he has been arrested on approximately five occasions. He stated his first arrest occurred when he was age 18, after a woman claimed he kidnaped her. He reported she made up the story as she got home late and used him as an excuse to her parents. Mr. Reynolds stated the case did not go anywhere. He reported he was arrested again at the age of 19, for Arson after making a smoke bomb that went off in his parent's garage and "made smoke." Mr. Reynolds indicated he was on probation for about one year after receiving this charge. Mr. Reynolds reported he was arrested again at the age of 27, for Drunk and Disorderly Conduct. He reported he got noisy when he was drinking and he was "locked up for the night." Mr. Reynolds stated he was going through a divorce at the time and was drinking heavily that night. His next arrest occurred at the age of 44, for Disturbing the Peace, after he was found to be arguing loudly with his son when he was living in Connecticut.

According to a National Criminal Record Search, Mr. Reynolds has been arrested in the past for the following crimes:

| | |
|---|---|
| 1995 | Assault, Disorderly conduct, Interference/Resistance (2 charges) - Convicted, 1 year suspended, 1 year probation. |
| 1978 | Menacing. |
| 1978 | Arson - Three years probation. |
| | Harassment, Repeated Acts to Annoy Person - Fine. |

**Psychiatric History:**

Mr. Reynolds reported his first contact with a mental health professional was in 1979, at the age of 19, when he was arrested for Arson after his smoke bomb went off in his family garage. He was committed to Greenlands Hospital and moved to Worchester General Medical Center. Mr. Reynolds

SACHARZEWSKA advised she last saw REYNOLDS approximately three weeks ago on November 10, 2005, when REYNOLDS returned from Thailand. SACHARZEWSKA stated that REYNOLDS returned to the U.S. on November 9, 2005. SACHARZEWSKA gave her vehicle, 1989 red Dodge Shadow, to REYNOLDS as a gift. SACHARZEWSKA stated her vehicle was not in good condition and she was considering scrapping the vehicle. On November 15, 2005, SACHARZEWSKA and REYNOLDS went to a notary in Wilkes Barre Township, Pennsylvania (across from Wegman's Store) to transfer the vehicle title over to REYNOLDS. REYNOLDS brought his desktop computer to SACHARZEWSKA's residence and connected his computer to SACHARZEWSKA's monitor so he could access his computer hard drive. SACHARZEWSKA advised that REYNOLDS also had a laptop computer with him which REYNOLDS told SACHARZEWSKA he purchased in Austria.

Mike,

Mom sends her love, and misses you awful. Was wondering if it is still a possibility that they let you out under home arrest. Also mom said the hand grenades were Danny's and the calls for terrorism weren't yours. Who then do we call and what do we do to get this information to the courts.

Sorry they changed your visitation days. We did try to see you on mom's birthday. Hang in there. We all want you home.

Love always,

Deb

FBI AGENT JOSEPH NOONE'S TESTIMONY AT TRIAL

And then he had said that the target in New York was actually in New Jersey; it was the Standard Oil Company in Perth Amboy, New Jersey. That's located along the turnpike, the New Jersey Turnpike. He didn't say that, but that's where it is located.

This is a double act of perjury, since this Petitioner could not name the Standard Oil Company of New Jersey, as a 'target', since it doesn't exist, see;

Standard Oil Company vs. US, (1911), 221 US 1, 55 L.Ed. 619, 31 S.Ct. 502, "In the first case under the Sherman Anti-Trust Law, for price-fixing, this Company was disolved and broken into smaller Companies, that became, in time, Exxon and Chevron"

Therefore, the Standard Oil Company of New Jersey does not exist, nor did it exist during this Petitioner's lifetime. As such, Petitioner could not have seen any signs naming this Company, nor Company locations, as there were none, not even the name in an ad, since it went closed long before this Petitioner was around. There is no possibility of the Petitioner naming this 'Standard Oil Company', as a target, and it is an insult to the Judicial system that this Petitioner went to trial, and a sworn Officer, and FIB Agent, no less, took an oath and swore this as viable reason to convict a person. Worse yet is the insult that occurs when a Federal Judge listens to this nonsense, allows it, knowing from Newspaper articles that this 'target' cannot exist, does not exist, and the 'site' is a vacant lot, owned by Chevron, empty since 1990, and convicted this Petitioner in spite of this. All based upon a known false arrest made on a frivolous charge by the FBI of a grenade ruled, 'harmless, so I disposed of it' by the Expert, Sgt. Cody Bergen in April, 2005, eight months before the 'arrest' for the 'illegal grenade', which was Dismissed as unfounded, at trial. Since it was an unfounded charge, any and all evidence obtained thereby was known to be tainted, as FRUITS OF THE POISONOUS TREE, and unusable. The Prosecution, as well as the Judge knew this to be so. This conviction cannot stand, it was and remains Unconstitutional, Vindictive Prosecution, and was proven to be so, not once, but eight times by law, under Goodwin, 457 US 368, 73 L.ed. 74, 102 S.Ct. 2485.

In case you missed the second perjury, its simple. Since there is no 'site' of the Standard Oil Company, even supposing this Petitioner had so named a defunct 'target' such as this, how does the FBI Agent not perjury in his comment, "That's located along the turnpike, the New Jersey Turnpike. He didn't say that, but that's where it is located." Since it isn't there, he then perjured all on his own, tainting the jury.

EXHIBIT SET G

## UNREBUTTED EVIDENCE

AND STATEMENTS

OF JOSEPH NOONE, FBI AGENT,

SHANNEN ROSSMILLER, COOPERATING WITNESS,

AND PROOF POSITIVE OF PHYSICAL IMPOSSIBILITY

OF PETITIONER TO HAVE COMMITTED EMAIL

CRIMES AS CHARGED WHILE IN JURISDICTION.

PAGE 1 - Explanation of findings and proof, all unrebutted by the Respondents.

PAGE 3 - Shannen Rossmiller's Television admission of the FBI not finding her to be a credible source.

PAGE 5 - Grand Jury Testimony of Joseph Noone, stating the the ISP used was traced to **346 Scott Street**.

PAGE 7 - FBI Form 302, Dated 12/09/2005, stating that Petitioner was staying at **400 Kidder Street**.

PAGE 8 - FBI Form 302, Dated 01/09/2006, stating that Petitioner was staying at **400 Kidder Street**. It also states that Petitioner made no internet usage from the Hotel, as the Hard Drive from the Hotel Computer had records, but not one internet phone number was logged.

-------------------------------------------------------------------

Peter vs. Hess Oil Virgin Islands Corp., 910 F2d 1179 (3rd Cir. 1990); See Fed. R. App. P. 28(b)(Appellee's Brief on Appeal shall adhere to Fed.R. App. P. 28(a)(4) and 'contain the contentions of the Appellee with respect to the issues presented' on Appeal. Thus uncontended arguments become facts under Fed. R. App. P. 28(a)(7), unless they are countered with facts in rebuttal by the Appellee's original Appeal Brief.

EXHIBIT Explanation

On page 14 of the Government's Response Brief;

'[Shannen] Rossmiller was able to determine from the message's header that its origin, and therefore Defendant's location, was now within the United States, and specifically within Pennsylvania. (Tr. 131) Agent Seyler confirmed that Defendant, who was from Wilkes-Barre, had been in Thailand and had returned to the United States on or about November 9, 2005. (Tr. 231-32).'

Of course the next few pages show the FBI, on a statement made on public Television, (sent to 5 Circuit, 1 Supreme and several District Judges as copies for **Judicial Notice**.), declared, by Ms. Rossmiller's own statement, that she was deemed by the FBI as not credible in her information that, 'I had for weeks, but they wouldn't believe me.' Ms. Rossmiller, as it further states, within our matter's Trial Transcripts, was under FBI investigation prior to and during the trial, for, 'improprieties and unlawful activities', in her internet dealings. (Please note Ms. Rossmiller is paid $15,000.00 a month for an usable information to the FBI, and $0.00 if it is found unusable). Ms. Rossmiller, now deemed not credible, **located the IP address, so she claims, thus "proving the email originated in Pennsylvania."** (Thus she gets paid).

Joseph Noone, FBI Agent, (who perjured at Trial; see EXHIBIT D, page 4), (who perjured the search warrant application; see EXHIBIT D, pages 2 & 3), also perjured before the Grand Jury. He states, under oath, (although e3ach perjury already done was under oath as well), on page 5 & 6, states they, [The Salt Lake City FBI and Shannen Rossmiller], traced the IP directly to 346 Scott Street, Wilkes-Barre, PA. Asked what an "IP" is, he claimed it was the Identification number for a computer being used for emails. In truth, the **IP** is the **Internet Protocol** number of the port, or telephone line connection, used to

then identify the <u>I</u>nternet <u>S</u>ervice <u>P</u>rovider (ISP), as to what phone line is being used. The ISP Company then can look up the line number and tell what <u>email name</u> was on it at any particular time, **but not who was online using that email name.** **That is impossible.**

Mr. Noone further testified, (still under oath), that the ISP Company verified that it was **Michael Curtis Reynolds** online chatting to her [Shannen], that being the Petitioner's name, at the **346 Scott Street address.**

Page 7, however, tells another story about this testimony, as being dated a year prior to the testimony of Mr. Noone, states that Petitioner was proven to be at **400 Kidder Street, twice, and verified by photo recognition by the owner and records.** Those records were then copied and identified as **FD-340.** The second proof was the receipt from this Petitioner's vehicle in Idaho, stating exactly the same information, that Petitioner stayed at the **Red Carpet Inn, 400 Kidder Street from November 10-16, 2005.** Page 8 even states this again, this time proving the computer hard drive, from the Hotel computer, **not only verified the stay dates, but also that there was no internet usage from there.**

Since <u>EXHIBIT B</u>, pages 1,2 & 3 all verify **the Petitioner owned no computer monitor** with which to physically send and emails from, the Hotel records confirming no usage is not all that surprising. This testimony, is surprising, being in front of the Grand Jury, since Ms. Rossmiller gave them the **IP Address**, which they 'traced and verified', to an address that **the Petitioner was not at.** More amazing is **where that trace lead to,** since only one person, (who verified this Petitioner allegedly committed an attemped murder at age 19 with explosives, but wasnt charged for that; proved the Petitioner was in Wilkes-Barre from November 10-16, 2005; was at the **346 Scott Street** and **Appalachian**

Self Storage, on April 15th, 2005, **a week prior** to the 'discoveries' of the 'live grenades'; in that same ·storage unit **for eight months** prior to that 'dicovered live grenade'; and **had the keys to the house at 346 Scott Street, Wilkes-Barre, Pa. where the emails were traced to**). That person is Kevin Reardon, the informant in this case, the person, according to the Government Response Brief as, 'as honest and trustworthy as Ms. Barbara Janick'. That is far from the truth, as is the testimony that the FBI and the people in this matter have given the Court, **Far from the truth**. The truth is before this Court, now let's do something with it constructively, and release this Petitioner, as law and morals require.

It is painfully clear by this point in time that there was little in this matter that would not be considered Vindictive Prosecution with the number of violations of Constitutional law. There is even a deeper question of the amount of **uncaught perjuries committed herein, and a shocking number of caught perjuries that the Government did not rebut, refute, nor deny**. The mere fact that any unrebutted act becomes, by law, accepted as factual and that the Government, given over fourteen points to respond to, choose only five to bother with, thus they have conceeded the other nine claims, and those made in the EXHIBITS sent them. The additional fact that the Government Response did not address **the fact that this Petitioner could not possibly have physically sent the emails from his computer PRIOR to the November 23, 2005 date that was testified to negates a crime in the VENUE OF PENNSYLVANIA, thus any and all of the wonderfully colorful emails in the Response Brief have no legal bearing after the November 10-16, 2005 applicable legal VENUE argument given the Government to respond to.**

This new information clearly shows that this Petitioner, who not only was proven physically impossible to have sent any emails in PA, has been proven innocent by the Government, as he was not at that address

Under the Federal Rules of Evidence, Rule 201;

(a) Scope of Rule.

This rule governs only judicial notice of adjudicated facts.

(d) When Mandatory.

**A Court shall take Judicial Notice if requested by a party and supplied with the necessary information.**

CNN CABLE NEWS, NOVEMBER 20, 2009 6:00 am, EST:
SHANNEN ROSSMILLER, FBI INFORMANT STATES,
"I had the information to prevent what
happened at Ft. Hood, but the FBI didn't
believe me."

Thus, the FBI found Ms. Rossmiller to be an unreliable source of information, that her credibility was lacking. This Court should also note, as it is supported in the Trial Transcripts, that the FBI testified that the emails Ms. Rossmiller was involved with were cut-and-pasted, which is in itself a violation of evidence tampering, thus also unreleiable. These emails before this Court were created by Ms. Rossmiller, and cannot then be credible. In fact, all the emails this Court shall consider, and that is only emails from November 10-16, 2005, (as venue was argued, and Petitioner was only in Penssylvania between those dates, thus only emails between those dates are applicable for review), were done by Ms. Rossmiller, and not then credible. This Court has then been furnished the information and shall take Judicial Notice, again uncontested facts by the Government.

"The District Court took Judicial Notice of the news coverage received by the settlement, including wire service articles published in various state, local and trade newspapers. Fairness Opinion, 962 F.Supp. at 496."

I, Michael Curtis Reynolds hereby request this Court take Judicial Notice of the acts, uncontested by the Government, certified as true and correct, under penalty of perjury pursuant to Title 28 USC §1746.

Since the FBI and other levels of professional law enforcement intelligence auhtorities found Ms. Rossmiller's "proof" to be lacking, this Court, under the Rules of Evidence, Rule 201(d), is then made to bwe mandated to take **Judicial Notice of the fact Ms. Rossmiller, on Public Television, declared herself to be judged not credible.** The Court should give no weight to the testimony and evidence she then presented. Since the FBI experts she worked under declared that the emails were cut-and-pasted, they violated the Federal Rules of Evidence in any event, and should never have been deemed admissible. Ms. Rossmiller was under investigation during the Petitioner's trial in 2007, for 'impropriety in obtaining evidence', this and the FBI evidence altering, in the form of cut-and-pasting the emails, are matters of fact in the testimony at Trial of this Petitioner, known full well to the Government, therefore this is not 'surprise evidence' that they could complain to the Court about. Since the Government was notified each and every step prior, during and after trial, in the form of Motions filed, with exhibits, they now have no complaints, since they never raised any, rebutted any, or proved otherwise.

Thus, they cannot raise any complaint now, being so time-barred. All of the facts contained in this statement are either evidence that was given the Government, given the Petitioner by the Government, or public knowledge, thus established facts under the law. This Court should then accept these as established facts, as they were presented in the District Court, and not disproven. As facts they should be used in  the adjudication of the matter before them, determining the level of Vindictive Prosecution done to this Petitioner, as it is not a legal question of **IF** there was Vindictive Prosecution, but **HOW MUCH** **was done, since the Prosecution still proceeded, without Probable** **Cause for arrest, and with a perjured Affidavit to do so.**

2

JOSEPH NOONE:  Called as a witness, being first duly sworn according to law, was examined and testified as follows:

BY MR. GURGANUS:

Q.  All right.  Please introduce yourself to the Grand Jurors.

A.  Joseph F. Noone, Special Agent with the FBI in Scranton, Pennsylvania here.

Q.  I want to direct your attention to an investigation that you were involved in of Michael Curtis Reynolds.  Can you tell the Grand Jurors how it is that you became involved in that investigation?

A.  First of all, I work terrorism matters out of the Scranton office, terrorism investigations.  But on November 18th, 2005 our office received a telephone call from Montana FBI office advising us that there was an individual communicating via Internet to a possible, what he believed to be a possible terrorist group.  They searched the IP address and it was traced back to 346 Scott Street, Wilkes-Barre, Pennsylvania.  That is why they were forwarding information to us.  At this time we didn't know where the subject was, but the IP address was traced back to that address.

Q.  When you say the "IP address", what do you mean by

291

that?

A. That is the identification number for the computer that was being used.

Q. Very good. And it came back to <u>Michael Curtis Reynolds</u>?

A. Yes.

Q. And the agent was able to determine that through <u>contact with the service provider</u>, is that right?

A. Yes.

Q. Now, this agent had been working with a cooperating witness, isn't that true?

A. Yes.

Q. And that cooperating witness had previously been involved in other investigations with the FBI, provided information to them that led to other arrests, isn't that right?

A. Correct.

Q. Now, can you -- by the way, who was the agent you were communicating with from Montana?

A. Mark Seyler, S-E-Y-L-E-R.

Q. And at the time you got involved, Agent Seyler filled you in on what had occurred to date, isn't that right?

A. Yes.

Q. Can you tell the Grand Jurors how it was that Michael Reynolds was identified as a person that was attempting to

292

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    12/09/2005

On December 7, 2005, Special Agent (SA) Larry J. Whitehead, Federal Bureau of Investigation (FBI), and Trooper Thomas Bachman, Pennsylvania State Police (PSP), returned to the RED CARPET INN located at 400 Kidder Street, Wilkes Barre, Pennsylvania, telephone number 570-823-2171, to re-interview the motel manager, RAY VEGA, regarding MICHAEL C. REYNOLDS.

Investigators asked VEGA if he was certain he recognized the photograph of REYNOLDS as the individual who stayed at the motel and again VEGA stated he was certain.  Investigators asked VEGA to manually search the motel handwritten records for any record of REYNOLDS by his name or his alias of MICHAEL C. YETY. VEGA provided the November 2005 handwritten "Check In Sheets" to investigators to search for either name.  SA Whitehead searched the records and located REYNOLDS' name written on the November 10, 2005 "Check In Sheet".  The record revealed that REYNOLDS checked in on November 10, 2005, paid cash for the room in the amount of $194.25, and was assigned room 173.  The record additionally revealed that REYNOLDS checked out from the motel on November 17, 2005.

VEGA provided copies of the "Check In Sheets" from November 10, 2006 through November 16, 2005 which will be maintained in an FD-340.

At approximately 7:00 p.m., SA Whitehead telephonically contacted VEGA to determine if the motel owner, KIRAN PATEL, would agree to consent to a forensic search of the non-functioning computer.  VEGA stated he contacted PATEL after investigators left and PATEL agreed to provide the infected computer to investigators in an attempt to extract the corrupted information from the computer.

### ADMINISTRATIVE NOTE

SA Joseph F. Noone, FBI, recovered a receipt for the RED CARPET INN from REYNOLDS at the time of REYNOLDS arrest in Pocatello, Idaho  The receipt was in the name of MIKE REYNOLDS, guest #3599, 400 Kidder Street, Wilkes Barre, Pennsylvania.  The receipt showed that REYNOLDS checked in on 11/10/2005 and checked out on 11/17/2005, stayed in room 173.  The receipt also provided the following ID:  4/6/58; 480553074.

---

Investigation on    12/06/2005    at Wilkes Barre, Pennsylvania

File # 315T-PH-100128-CRIM                     Date dictated

by    SA Larry J. Whitehead:ljw

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

D-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    01/09/2006

On December 14, 2005, Special Agent (SA) Larry J. Whitehead, Federal Bureau of Investigation (FBI), met with RAY VEGA, Manager, RED CARPET INN which is located at 400 Kidder Street, Wilkes-Barre, Pennsylvania. VEGA provided the disabled hard drive from the motel's management office to SA Whitehead in order that a computer forensic examination could be conducted on the hard drive.

VEGA previously informed SA Whitehead and Trooper Tom Bachman, Pennsylvania State Police (PSP), that MICHAEL REYNOLDS recently stayed at the motel, however, the motel's computer system was infected with a computer virus and the computer files containing REYNOLDS' information could not queried by the motel management. VEGA provided SA Whitehead with a Seagate Barracuda 40 GB hard drive, serial number 3HS10PY0. VEGA voluntarily signed a Consent To Search Computer Form and a Property receipt for the hard drive. The hard drive and a copy of the Consent To Search Computer Form were then delivered to the PSP, Area II Computer Crime Unit at 1095 Hanover Street, Wilkes-Barre, Pennsylvania for a forensic examination. Trooper Brian P. Murphy, PSP, assumed custody of the hard drive and entered the hard drive into PSP evidence.

On December 14, 2005, Trooper Murphy conducted a forensic examination of the hard drive and subsequently provided the results of the forensic examination to Trooper Bachman.

On December 23, 2005, Trooper Bachman provided the results of the forensic examination to SA Whitehead and SA Joseph F. Noone. Trooper Bachman provided a copy of the PSP General Investigative Report, Incident Number P01-0581490, dated 12/16/2005, prepared by Trooper Murphy along with the following attachments: EnCase Computer Analysis Report; Text Fragments Report; Documents Report; Copy of Consent to Search Form; Copy of Request for Forensic Analysis Form; and five DVDs of the EnCase Image Files. The forensic examination of the hard drive revealed files depicting that REYNOLDS stayed at the motel. These reports will be maintained in an FD-340.

On January 5, 2006, SA Whitehead returned the hard drive to VEGA.

Investigation on    01/05/2006    at   Wilkes-Barre, Pennsylvania

File #  315T-PH-100128-CRIM

Date dictated

by   SA Larry J. Whitehead:ljw

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

# CERTIFICATE OF SERVICE

I, _Michael Curtis Reynolds_, HEREBY CERTIFY UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 §1746 THE AFORESAID TO BE TRUE AND CORRECT, AND A COMPLETE COPY OF THE FOLLOWING MOTION TO THE COURT:

Emergency Motion Under
§2241 & §2243 Habeus Release

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

10671-023

Theodore Smith
Attorney    AT    LAW
228 Walnut Street
PO BOX 11754
Harrisburg, PA - 17106
United States

and deposited same in the Legal Mail Depository for the United States Post Office, at the United States Pennitentiary; Signed on this __2ND__ day of _December_, _2009_.

CERTIFIED SLIP NUMBER :

_____/_____/_____/_____

Respectfully Submitted,

_Michael Curtis Reynolds_
PETITIONER PRINTED NAME

_Michael Curtis Reynolds_
PETITIONER SIGNATURE

REG. NO. __10671023__

MICHAEL CURTIS REYNOLDS
REG. NO. 10671-023
USP ALLENWOOD
PO BOX 3000
WHITE DEER, PA. 17887

7009 0820 0001 9389 5892

RECEIVED
SCRANTON

DEC 07 2009

PER _____
DEPUTY CLERK

MAILED FROM
U.S PENITENTIARY

Case 3:05-cr-00493-MEM   Document 354   Filed 12/07/09   Page 23 of 23



10671-023

HONORABLE JUDGE CONABOY