## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL CURTIS REYNOLDS,                      :
     Petitioner                            :
                             :    CASE NO.    3:05-CR-493
     v.                                    :    (RELATED CASE NO. 3:11-CV-1612)
                             :
UNITED STATES OF AMERICA,                     :    (Judge Nealon)
     Respondent                            :

### NOTICE OF ELECTION

I, _Michael Curtis Reynolds_ petitioner in the above-captioned action, have read the Order of Court which accompanied this form notice. Pursuant to that Order, I elect to proceed in this action as follows:

**X**    I have labeled my petition as a petition for writ of habeas corpus under 28 U.S.C. § 2255. I choose to have the Court rule on my petition as filed. I understand that I may be forever barred from presenting in federal court any claim not presented in this petition. I further understand that by doing so I may lose my ability to file a second or successive petition absent certification by the Court of Appeals, and that the potential for relief is further limited in a second or successive petition.

___    I have labeled my petition as a petition for writ of habeas corpus under 28 U.S.C. § 2255. I choose to withdraw the petition so that I may file one, all-inclusive petition under 28 U.S.C. § 2255 within the one-year limit for filing such a petition.

YOUR ELECTION ON THIS FORM, AS WELL AS THE FAILURE TO MAKE AN ELECTION, WILL BE BINDING ON YOU AS IT RELATES TO YOUR LITIGATION IN FEDERAL COURT OF ANY CLAIM RELATED TO THE CUSTODY YOU HAVE CHALLENGED. READ CAREFULLY THE ORDER ACCOMPANYING THIS FORM NOTICE OF ELECTION.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _8/24/2011_.
        (Date)

                               (Signature of Petitioner)

FILED
SCRANTON

NOV 0 8 2011

PER _M. b._
      DEPUTY CLERK

Your Honor,

As you point out, there is but one §2255 to be filed absent Appeal Court approvals. Thus, I will now clarify for the Court the issues before it. Since much is in the form of witness testimony, a hearing is a must. Since I am in Florida and require a PI to locate witnesses, do legal argument I cannot do from the SHU here and legal support in the form of a court assistance lawyer, (I will be lead counsel or only counsel), an immediate Habeus to LCP will be necessary. As Prosecutor John Gurganus was removed by the Appeal Court for his misconduct, which I have admissions of under Rule 36, he may not argue this matter. The issues presented are:

Failure of Joseph O'Brien to argue:
False arrest
Violation of Search Warrant
Contamination of Search Area.
Perjury before Grand Jury
Coerced Witness
Failure to Investigate
Failure to Interview eyewitness
Failure to Produce witnesses
Removal of Witnesses available at Court
Failure to argue no knowledge of crime.
Failure to argue for Suppression Evidence.

JOSEPH O'BRIEN's TELEPHONE TRANSCRIPT

Sept. 26, 2006
Prior to Superceding Indictment

JOSEPH : Hi Mike, What's on your mind?

PETITIONER : I just got this document from the psychiatrist in MCC, New York. Have you read it yet?

JOSEPH : Yes, Why?

PETITIONER : There's a part where she discusses the perjury in this case, you read that part?

JOSEPH : No, why?

PETITIONER : It says the psychiatrist talked to both attorneys about it. Both Attorneys as in two, as in YOU AND JOHN GURGANUS, AND SHE WAS TOLD THE PERJURY NEVER HAPPENED, Did you ever tell her that?

JOSEPH : No, I didn't.

PETITIONER : So you never told her that the Prosecutor did not commit perjury?

JOSEPH : NO, NEVER.

PETITIONER : And you were in the room when the Prosecutor was told that this was perjured, the Affidavit of Probable Cause?

JOSEPH : Yes, it was.

PETITIONER : So, the Prosecutor did commit perjury to the Grand Jury then?

JOSEPH : EVERYTIME THAT HE READ IT, YES.

PETITIONER : ok then, thanks Joe.

1

Page 13

SINCE WE ALREADY KNEW THE STATEMENT ABOUT ANY EXPLOSIVE ON A DOOR WAS A

LIE, PROVEN BY COURT RECORDS, ONCE AGAIN LARRY WHITEHEAD FALSIFIED THE

EVIDENCE GIVEN BY RESTATING THE KNOWN FALSE STORY., OR WHERE IS THIS WITNESS?

Agents and officers arrived at Appalachian Self Storage to initiate the search. Prior to the search, investigators learned that REYNOLDS could have possibly booby trapped his storage unit in a similar manner that he previously booby trapped his father's garage door with an explosive device.

Investigation on ___12/05/2005___ at Wilkes Barre Township, Pennsylvania

File # 315T-PH-100128-CRIM                                    Date dictated _____

by    SA Larry J. Whitehead:ljw / SA Michael T. Baumgardner
      SA James J. Glenn / SA John H. Brunnenmeyer

Since Sgt. Cody Bergen had reported on April 23, 2005, that the 'live grenade' discovered, was not live, but "harmless, so we disposed of it", and this was proved at Trial, dismissed as false, this whole arrest is false, knowingly so eight months prior, and all evidence thus tainted. Not to mention no crime occurred in PA on Counts 1-4, thus no jurisdiction exists for arrest.                    CONCLUSION

54.   Your affiant believes, based upon the information provided above, there is probable cause to believe that MICHAEL CURTIS REYNOLDS did knowingly, intentionally, and unlawfully possess an unregistered destructive device in violation of Title 26, USC, Section 5861(d), and requests that a warrant issue for Reynold arrest on that charge.

55.   Your affiant believes, based upon the above, there is probable cause to believe that within (1) the storage unit utilized by MICHAEL CURTIS REYNOLDS located at Appalachian Self Storage in Wilkes-Barre Township, Pennsylvania; (2) his 1989 Dodge Shadow; and (3) Room 205 at the Thunderbird Motel, 1415 South 5th Avenue, Pocatello, Idaho, there may be found fruits, instrumentalities, and evidence of the crimes enumerated above, as particularly described in Attachment B of the Search Warrant Application.

56.   Your affiant, having signed this affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Larry J. Whitehead
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before
me this 5th day of December 2005,
at Wilkes-Barre, Pennsylvania.

# Page 14

Dear Sir,

(1) I wish to make a true statement as to the facts of things that happened at Purdys New York, I did not tell the F.B.I. that there was a Bomb on the floor or anywhere else. My son Michael C. Reynolds did not try to kill his father or me ever. All statements otherwise are false, as to his father saying anything otherwise are also false. It is very easy to make statements when the person is not able to deny them as he has passed away.

(2) as to things that happened in Wilkes Barre, the only gun and grenade I ever saw was a smoke bomb their military phone mike worked, The Bullets were his ex wifes. He removed them for the safety of his children.

Page 15

The F B I has changed my statement to suit their case. my son is can a loving, caring person who has been there for me thru all my traumas and troubles. I hope that you can find the truth in his case. He has been punished enough, I was never asked to testify and have been lied to so many time

In early.

joyce B Reynolds

FRANCES MARTIN-CHILDS
Notary Public, State of New York
No. 01MA6072621
Residing in Broome County
My commission expires Apr. 8, 2008
2010

Page 16

## JOYCE REYNOLDS' STATEMENT

DEAR SIR,

I wish to make a true statement as to the facts of things that happened in Purdy's New York. I did not ever tell the FBI there was a bomb on the door or anywhere else. My son Michael C. Reynolds did not try to kill his father or me ever. All statements otherwise are false. As to his father saying anything otherwise are also false. It is very easy to make statements when the person is not able to deny them as he passed away.

As to things that happened in Wilkes-Barre, Pa. the only grenade I ever saw was a smoke grenade for Skirmish, where Mike worked. The bullets were his ex-wife's. He removed them for the safety of his children.

The FBI has changed my statement to suit their case. My son is a loving, caring person who has been there for me thru all my traumas and troubles. I hope that you can find the truth in this case. He has been punished enough. I was never asked to testify and have been lied to many times.

Signed Joyce Reynolds

## FBI FORM 302 "STATEMENT" OF JOYCE REYNOLDS

JOYCE REYNOLDS was shown a color copy of a photograph taken of the live grenade found during the execution of a search warrant at the storage unit used by MICHAEL REYNOLDS. Investigators advised JOYCE REYNOLDS that the type of grenade depicted in the photograph was reffered to as a 'pineapple grenade' due top the shape and texture of the grenade which had a rough texture similar to a pineapple. JOYCE REYNOLDS positively identified the grenade in the photograph as looking exactly like the grenade which she observed on a tote inside her home at 346 Scott Street, Wilkes-Barre, PA. JOYCE REYNOLDS believed the photograph depicted a similar grenade that MICHAEL REYNOLDS told her was a smoke grenade that he used at Skirmish Paintball. After JOYCE REYNOLDS saw the grenade on the tote she never saw it again, she believed that MICHAEL REYNOLDS took the grenade to Skirmish.

The truth is that Joyce Reynolds was never interviewed, or shown a photograph

# Page 17

## John Gurganus Rebuttal of Venue

Regardless, venue was entirely proper in this district. Under 18 U.S.C. Section 3237, any offense against the United States begun in one district and completed in another, or committed in more than one district may be prosecuted in any district in which the offense was begun, continued, or completed. Given the facts that Reynolds retrieved the computer integral to the commission of the offense in this district ▓▓▓▓▓▓ as part of the crimes ▓▓▓▓▓▓▓▓▓.

**Note:**
**In this district**
**(Venue) →**

## John Gurganus Rebuttal

Regardless, as noted above, prosecution of this case was entirely proper given Reynolds' continuation of the offenses while in this district which included ▓▓▓▓▓▓▓ to the person he believed a terrorist from his ▓▓▓▓▓▓▓▓▓▓ ▓▓▓.

**Venue →**

## Justyna Sachareski's Statement . . .

SACHARZEWSKA advised she last saw REYNOLDS approximately three weeks ago on November 10, 2005, when REYNOLDS returned from Thailand. SACHARZEWSKA stated that REYNOLDS returned to the U.S. on November 9, 2005. SACHARZEWSKA gave her vehicle, 1989 red Dodge Shadow, to REYNOLDS as a gift. SACHARZEWSKA stated her vehicle was not in good condition and she was considering scrapping the vehicle. On November 15, 2005, SACHARZEWSKA and REYNOLDS went to a notary in Wilkes Barre Township, Pennsylvania (across from Wegman's Store) to transfer the vehicle title over to REYNOLDS. REYNOLDS brought his ▓▓▓▓▓▓▓▓▓ to SACHARZEWSKA's residence and connected his computer to SACHARZEWSKA's ▓▓▓▓▓ so he could access his computer hard drive.

**Look ma, no Monitor!**

## Kevin Reardon's Testimony

A.    I know that he went with my wife to buy some ▓▓▓▓▓ ▓▓▓▓▓▓▓

**Verification of Nov 23, 2005 buying Monitor.**

Page 18

**From:** xxxxxx xxxxxx
**Date:** Sun, 13 Nov 2005
**Subject:** retirement
**To:** xxxxxxxxxxxxxxxx@yahoo.com>

**From:** xxxxxxxxxxx@yahoo.com>
**Date:** Sun, 13 Nov 2005
**Subject:** Re: retirement
**To:** "Michael Reynolds" <longtermonly2@yahoo.com>

**From:** "fritz meuller" <homeapproach@yahoo.com>
**Date:** Sun, 13 Nov 2005
**Subject:** new email
**To:** xxxxxxxxxxx@yahoo.com>

**From:** "fritz meuller" <homeapproach@yahoo.com>
**Date:** Mon, 14 Nov 2005
**Subject:** Re: timing
**To:** xxxxxxxxxxxxxx@yahoo.com>

**From:** "fritz meuller" <homeapproach@yahoo.com>
**Date:** Mon, 15 Nov 2005
**Subject:** Re: offended
**To:** xxxxxxxxxxxxxx@yahoo.com>

These Emails, claimed the Plaintiff's also:

**From:** "Michael Reynolds" <longtermonly2@yahoo.com>
**Date:** Mon, 21 Nov 2005
**Subject:** needs

**From:** xxxxxxxxxxxxx@yahoo.com>
**Date:** Wed, 23 Nov 2005
**Subject:**
**To:** "Michael Reynolds" <longtermonly2@yahoo.com>

**From:** Mililiapal2@aol.com
**Date:** Wed, 23 Nov 2005
**Subject:** shopping
**To:** xxxxxxxxxxxxxxxx@yahoo.com>

Page 19

10/15/07                                          9

Debra Reardon, Prosecution Witness

To whom it may Concern,

On or about November 23rd, 2005 I took Michael C Reynolds to the Salvation Army to purchase a computer monitor. As far as Internet service during his stay with our mother she does not own a computer nor does she have access to the Internet through her telephone/television cable provider.

Time Warner Cable
483 Plaza Drive
Vestal, NY 13850
607-798 8001.

As far as using my Internet Access. Michael was not in my home during this time. from November 20 & 24th 2005

Frances Martin-Childs
FRANCES MARTIN-CHILDS

Page 20

Debra Reardon's trial testimony of Petitioner

361

Q.    How long was he in the Binghamton area?

A.    Two, three days at the most.

Q.    When he was there, was he staying with you?  Was he staying with --

A.    -- with my mother.

Q.    With your mother.  How far did she live from you?

A.    About a block and a half from me.

Q.    Did you go anywhere with him at that time?

A.    Yes.  We went, we got a monitor for his computer.

Q.    When you say a monitor --

A.    The screen.

Q.    For what type of a computer?

A.    I don't know.

Q.    So is it like --

A.    Like a tower, like a --

Q.    It was for a tower?

A.    I don't know what they are.  I'm sorry.  I don't see any here.

Q.    The monitor that you're talking about, was it something like that's in front of you?  Or was it more of a television?

A.    More of a television.  It wasn't a flat screen.

Q.    Where did he buy that?

A.    He bought it at the Salvation Army.

Q.    What type of car did he have at the time?

A.    A red car.  I think a Shadow, but I'm not sure.

RECEIVED
NOV 9 - 2010
OFFICE OF THE CLERK
SUPREME COURT, U.S.

RECEIVED
NOV 9 - 2010
OFFICE OF THE CLE
SUPREME COURT U.

JOSEPH NOONE:  Called as a witness, being first duly sworn according to law, was examined and testified as follows:

BY MR. GURGANUS:

Q.  All right.  Please introduce yourself to the Grand Jurors.

A.  Joseph F. Noone, Special Agent with the FBI in Scranton, Pennsylvania here.

Q.  I want to direct your attention to an investigation that you were involved in of Michael Curtis Reynolds.  Can you tell the Grand Jurors how it is that you became involved in that investigation?

A.  First of all, I work terrorism matters out of the Scranton office, terrorism investigations.  But on November 18th, 2005 our office received a telephone call from Montana FBI office advising us that there was an individual communicating via Internet to a possible, what he believed to be a possible terrorist group.  They searched the IP address and it was traced back to 346 Scott Street, Wilkes-Barre, Pennsylvania.  That is why they were forwarding information to us.  At this time we didn't know where the subject was, but the IP address was traced back to that address.

Q.  When you say the "IP address", what do you mean by that?

A.  That is the identification number for the computer that was being used.

Q.  Very good.  And it came back to Michael Curtis Reynolds?

A.  Yes.

Q.  And the agent was able to determine that through contact with the service provider, is that right?

A.  Yes.

Q.  Now, this agent had been working with a cooperating witness, isn't that true?

A.  Yes.

Q.  And that cooperating witness had previously been involved in other investigations with the FBI, provided information to them that led to other arrests, isn't that right?

A.  Correct.

Q.  Now, can you -- by the way, who was the agent you were communicating with from Montana?

A.  Mark Seyler, S-E-Y-L-E-R.

Q.  And at the time you got involved, Agent Seyler filled you in on what had occurred to date, isn't that right?

A.  Yes.

Q.  Can you tell the Grand Jurors how it was that Michael Reynolds was identified as a person that was attempting to

RECEIVED
NOV 9 – 2010
OFFICE OF THE CLERK
SUPREME COURT, U.S.

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription  12/09/2005

On December 7, 2005, Special Agent (SA) Larry J.
[Whitehead, F]ederal Bureau of Investigation (FBI), and Trooper
[___] [h]man, Pennsylvania State Police (PSP), returned to the
[___]INN located at 400 Kidder Street, Wilkes Barre,
[Pennsylvan]ia, telephone number 570-823-2171, to re-interview the
[Mana]ger, RAY VEGA, regarding MICHAEL C. REYNOLDS.

Investigators asked VEGA if he was certain he recognized
[a photo]graph of REYNOLDS as the individual who stayed at the
[motel. Ag]ain VEGA stated he was certain.  Investigators asked
[VEGA to man]ually search the motel handwritten records for any
[stay of] REYNOLDS by his name or his alias of MICHAEL C. YETY.
[VEGA provi]ded the November 2005 handwritten "Check In Sheets" to
[investigat]ors to search for either name.  SA Whitehead searched the
[records and] located REYNOLDS' name written on the November 10, 2005
["Check In Sheet".  The record revealed that REYNOLDS checked in on
[November 1]0, 2005, paid cash for the room in the amount of $194.25,
[and was assi]gned room 173.  The record additionally revealed that
[REYNOLDS che]cked out from the motel on November 17, 2005.

VEGA provided copies of the "Check In Sheets" from
[October __, 2]006 through November 16, 2005 which will be
[maintained i]n an FD-340.

At approximately 7:00 p.m., SA Whitehead telephonically
[contacted] VEGA to determine if the motel owner, KIRAN PATEL, would
[c]onsent to a forensic search of the non-functioning
[computer.] VEGA stated he contacted PATEL after investigators left
[and PATEL a]greed to provide the infected computer to investigators
[in an attem]pt to extract the corrupted information from the
[computer.]

ADMINISTRATIVE NOTE

[S]A Joseph F. Noone, FBI, recovered a receipt for the RED
[CARPET INN f]rom REYNOLDS at the time of REYNOLDS arrest in
[Idaho.  The receipt was in the name of MIKE REYNOLDS,
[___]- 400 Kidder Street, Wilkes Barre, Pennsylvania.  The
[receipt reveal]ed that REYNOLDS checked in on 11/10/2005 and checked
[out on 11/17/2005, stayed in room 173.  The receipt also provided
[the follow]ing ID:  4/6/58; 480553074.

[12/0]6/2005  at  Wilkes Barre, Pennsylvania

[___]00128-CRIM                         Date dictated

[SA] J. Whitehead:ljw

[ne]ither recommendations nor conclusions of the FBI  It is the property of the FBI and is loaned to your agency.

---

RECEIVED.
NOV 9 – 2010
OFFICE OF THE CLERK
SUPREME COURT, U.S.

2 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription  01/09/2006

On December 14, 2005, Special Agent (SA) Larry J.
Whitehead, Federal Bureau of Investigation (FBI), met with RAY
VEGA, Manager, RED CARPET INN which is located at 400 Kidder
Street, Wilkes-Barre, Pennsylvania.  VEGA provided the disabled
hard drive from the motel's management office to SA Whitehead in
order that a computer forensic examination could be conducted on
the hard drive.

VEGA previously informed SA Whitehead and Trooper Tom
Bachman, Pennsylvania State Police (PSP), that MICHAEL REYNOLDS
recently stayed at the motel, however, the motel's computer system
was infected with a computer virus and the computer files
containing REYNOLDS' information could not queried by the motel
management.  VEGA provided SA Whitehead with a Seagate Barracuda 40
GB hard drive, serial number 3HS10PY0.  VEGA voluntarily signed a
Consent To Search Computer Form and a Property receipt for the hard
drive.  The hard drive and a copy of the Consent To Search Computer
Form were then delivered to the PSP, Area II Computer Crime Unit at
1095 Hanover Street, Wilkes-Barre, Pennsylvania for a forensic
examination.  Trooper Brian P. Murphy, PSP, assumed custody of the
hard drive and entered the hard drive into PSP evidence.

On December 14, 2005, Trooper Murphy conducted a forensic
examination of the hard drive and subsequently provided the results
of the forensic examination to Trooper Bachman.

On December 23, 2005, Trooper Bachman provided the results of
the forensic examination to SA Whitehead and SA Joseph F. Noone.
Trooper Bachman provided a copy of the PSP General Investigative
Report, Incident Number P01-0581490, dated 12/16/2005, prepared by
Trooper Murphy along with the following attachments:  EnCase
Computer Analysis Report; Text Fragments Report; Documents Report;
Copy of Consent to Search Form; Copy of Request for Forensic
Analysis Form; and five DVDs of the EnCase Image Files.  The
forensic examination of the hard drive revealed files depicting
that REYNOLDS stayed at the motel.  These reports will be
maintained in an FD-340.

On January 5, 2006, SA Whitehead returned the hard drive to
VEGA.

Investigation on  01/05/2006  at  Wilkes-Barre, Pennsylvania

File #  315T-PH-100128-CRIM                    Date dictated

by  SA Larry J. Whitehead:ljw

FD-302 (Rev. 10-6-95)

*Page 23*

4

-1-

FEDERAL BUREAU OF INVESTIGATION

*Kevin Reardon Perjury*  Date of transcription  12/09/2005

On December 4, 2005, Special Agent (SA) Larry J. Whitehead, Federal Bureau of Investigation (FBI), telephonically contacted Police Officer Tom Kupetz, Wilkes Barre Police Department (WBPD), Wilkes Barre, Pennsylvania, telephone number 570-237-0220, regarding an incident involving MICHAEL C. REYNOLDS and the discovery of a grenade at REYNOLDS' residence located at 346 Scott Street, Wilkes Barre, Pennsylvania, on April 23, 2005.

Officer Kupetz provided the following information:

#1 →

Officer Kupetz recalled that REYNOLDS' brother-in-law was cleaning out REYNOLDS' residence when a <u>grenade fell out of a duffel bag along with other possessions</u> belonging to REYNOLDS. Officer Kupetz advised that prior to his arrival at the residence, the grenade was placed onto REYNOLDS' bed in REYNOLDS' bedroom which was located on the second floor in the front of the residence, meaning facing the front street (Scott Street). Officer Kupetz also recalled that REYNOLDS lived in the house with his mother.

<u>DEBRA REARDON'S Testimony at Trial</u>

Q.    Now, is a duffel bag and a tote the same thing?

A.    No.

Q.    Okay. Now, are you sure that the grenade was found in a tote?

A.    Yes.

Q.    Now, I have before me a report from the Federal Bureau of Investigation from a Larry Whitehead. Do you know Mr. Whitehead?

A.    Yes.

Q.    In that report, it says therein, and I'm going to read it to you. The report stated that the grenade was found in a duffel bag among Michael Reynolds' belongings. Is that report incorrect?

#2 →    A.    I did not find it in a duffel bag; I found it in a tote.

Page 24

# Ola Whitehead's Testimony

Q.    Now, what did he say it was?

A.    He just said it was a grenade from when he was in the Army.

Q.    Did you ask him any questions about it?

A.    No, I wasn't really interested in it.

Q.    I'm going to show you Government Exhibit 100.13.

A.    Yeah, that's the one.

Q.    That appears to be what you saw?

A.    That is correct.

"I testified, Mike, it killed me to be up there and testify, but I had no choice. I want to explain, but I am too scared to at the same time. I don't know what I can and can't write and what I should and shouldn't write."

"They started to go over the possible questions. All were mostly about the grenade. I had no idea when I saw it, none. They told me to think back hard and I had to guess. When they mentioned times and dates, I didn't remember. So they said would you say it was in this timeline? I said maybe. And somehow it was decided it was before you left. I now know they tricked me into saying that time frame and I'm sorry but I still don't remember when I saw it or why I do know it was in the house. And no, I didn't know who's it was, but I remembered you telling me didn't remember who's. Now I remember clearly. It was Danny's, you told me that."

"I did testify what I believed was the truth and or what I was made to believe was the truth. I would have done so much more different now today then that day. I testified, I'm so sorry. Everything was so intimidating and so scary. I didn't see till afterwards how clueless I was to everything around me. Monday night when I got the call to show up for 11 on tuesday, my life stopped. I was so scarde, scared of seeing you, scared of going there, scared of testifying, scared of looking you in the eye. I felt I was betraying you, but couldn't do anything about it."

Page 25

"I testified, Mike, it killed me to be up there and testify, but I had no choice. I want to explain, but I am too scared to at the same time. I don't know what I can and can't write and what I should and shouldn't write."

"They started to go over the possible questions. All were mostly about the grenade. I had no idea when I saw it, none. They told me to think back hard and I had to guess. When they mentioned times and dates, I didn't remember. So they said would you say it was in this timeline? I said maybe. And somehow it was decided it was before you left. I now know they tricked me into saying that time frame and I'm sorry but I still don't remember when I saw it or why I do know it was in the house. And no, I didn't know who's it was, but I remembered you telling me didn't remember who's. Now I remember clearly. It was Danny's, you told me that."

"I did testify what I believed was the truth and or what I was made to believe was the truth. I would have done so much more different now today then that day. I testified, I'm so sorry. Everything was so intimidating and so scary. I didn't see till afterwards how clueless I was to everything around me. Monday night when I got the call to show up for 11 on tuesday, my life stopped. I was so scarde, scared of seeing you, scared of going there, scared of testifying, scared of looking you in the eye. I felt I was betraying you, but couldn't do anything about it."

Theses are excerpts from personal letters handwritten by Ola Whitebread to this Plaintiff, which can be provided in time, but do exist on file within motion 07-CV-3210, Appeal Court, Philly. No one can look at this and **not** say that the coaching and coersion is not obvious in her statements. The additional fact that the Government, Prosecutor John Gurganus, defended the Government position of dismissal of the post-trial remedy sought through the Arrested Judgement Motion filed by arguing, 'Ola Whitebread **never** said or testified that the device that she saw in the possession of the [Plaintiff here] was 'live' at the time that she saw it.'If the Plaintiff is not witnessed with an illegal item, where is the element of knowledge of the illegality then proven? It is not. John also stated that the device she saw had no fuse at the time that she saw it, but John had her identify Gov't Exhibit 100.13, which was a 'live' grenade, one with a visible fuse showing. this then not only proves John knew he mislead the jury, but also, since Plaintiff never told John that Ola had said it was not a fused device, therefore john has admitted Ola was coached to testify otherwise.

Page 25

FBI AGENT JOSEPH NOONE'S TESTIMONY AT TRIAL

And then he had said that the target in New York was actually in New Jersey; it was the Standard Oil Company in Perth Amboy, New Jersey. That's located along the turnpike, the New Jersey Turnpike. He didn't say that, but that's where it is located.

This is a double act of perjury, since this Petitioner could not name the Standard Oil Company of New Jersey, as a 'target', since it doesn't exist, see;

Standard Oil Company vs. US, (1911), 221 US 1, 55 L.Ed. 619, 31 S.Ct. 502, "In the first case under the Sherman Anti-Trust Law, for price-fixing, this Company was disolved and broken into smaller Companies, that became, in time, Exxon and Chevron"

Therefore, the Standard Oil Company of New Jersey does not exist, nor did it exist during this Petitioner's lifetime. As such, Petitioner could not have seen any signs naming this Company, nor Company locations, as there were none, not even the name in an ad, since it went closed long before this Petitioner was around. There is no possibility of the Petitioner naming this 'Standard Oil Company', as a target, and it is an insult to the Judicial system that this Petitioner went to trial, and a sworn Officer, and FIB Agent, no less, took an oath and swore this as viable reason to convict a person. Worse yet is the insult that occurs when a Federal Judge listens to this nonsense, allows it, knowing from Newspaper articles that this 'target' cannot exist, does not exist, and the 'site' is a vacant lot, owned by Chevron, empty since 1990, and convicted this Petitioner in spite of this. All based upon a known false arrest made on a frivolous charge by the FBI of a grenade ruled, 'harmless, so I disposed of it' by the Expert, Sgt. Cody Bergen in April, 2005, eight months before the 'arrest' for the 'illegal grenade', which was Dismissed as unfounded, at trial. Since it was an unfounded charge, any and all evidence obtained thereby was known to be tainted, as FRUITS OF THE POISONOUS TREE, and unusable. The Prosecution, as well as the Judge knew this to be so. This conviction cannot stand, it was and remains Unconstitutional, Vindictive Prosecution, and was proven to be so, not once, but eight times by law, under Goodwin, 457 US 368, 73 L.ed. 74, 102 S.Ct. 2485.

In case you missed the second perjury, its simple. Since there is no 'site' of the Standard Oil Company, even supposing this Petitioner had so named a defunct 'target' such as this, how does the FBI Agent not perjury in his comment, "That's located along the turnpike, the New Jersey Turnpike. He didn't say that, but that's where it is located." Since it isn't there, he then perjured all on his own, tainting the jury.

Page 27

RECEIVED
OCT 14 2010
OFFICE OF THE CLERK
SUPREME COURT, U.S.

## FACTS OF JUDICIAL NOTICE

1)    The Standard Oil Company of Perth Amboy, NJ. has not existed since 1930, disbanded under the Sherman Anti-Trust Act in US vs. Standard Oil Company, 55 L.Ed 619, 221 US 1 (1911), by the Supreme Court.

2)    The Standard Oil Company of Perth Amboy NJ. can not be viewed from the New Jersey Turnpike, **as it doesn't exist anymore**.

3) The property, once owned and occupied by the Standard Oil Company in Perth Amboy, NJ. is a vacant lot, leveled since 1990 by the Chevron Corporation. No structures are on that site.

4) Joseph Noone, FBI Agent perjured before each and every jury that he testified to about the Standard Oil Company in Perth Amboy, NJ. and **"He didn't say this, but it can be seen from the New Jersey Turnpike."**

5) The Court records from North Salem, NY. in regards to the 1978 incident state no explosives were used, no trigger was on any garage door, and it was not a, **"device that failed to explode when triggered by opening the garage door, discovered by Millard Reynolds, and then reported to police."**

6) Kevin Reardon lied about the 1978 incident and the FBI knew so.

7) Joyce Reynolds told the FBI and attempted to testify to the Courts that this statement by Kevin Reardon was a lie. Judge Kosik refused to obtain and preserve this testimony.

8)    Kevin Reardon lied to the first Officer on the scene in April 23, 2005 about. **"his discovery of the grenade in a duffle bag, he never discovered it, and it was not found in a dufflebag, Debra Reardon had found it in a Tote Bin [Rubbermaid]."**

9)    Kevin Reardon lied about many things that the FBI knew about, which includes the **"$250,000.00 spent by Michael Reynolds of Millard Reynolds death benefits."** There was no vast death benefit, but less than $40,000.00

Page 28

10) No emails were sent by Michael Curtis Reynolds from Pennsylvania, the FBI knew this, verified it by both the hard drive unit from the hotel there, and three witnesses testified that **there existed no computer monitor with which to send emails while in PA, thus there is no jurisdiction for a trial on emails in Pa.**

11) The FBI coached Ola Whitebread's testimony, which she recanted.

12) Judge Kosik stated reasonable doubt existed as to the existence of the second grenade being possessed by Petitioner.

13) Joseph Noone lied to the Grand Jury about the first grenade being 'detonated', since it was known and testified to as **being of insufficient powder to explode**, and **was placed in the scrap pile**.

14) Joseph Noone had access to the April 23, 2005 report, and knew the first grenade was not a live grenade, and that it hadn't been blown up, since it was not live. He knew this was why the State did not press a felony warrant since April, 2005. **There was no crime committed**.

15) Both FBI Agents knew that no felony crime was committed in April 23, 2005.

16) The search warrant for the computers was breeched prior to the warrant issuance of Dec. 21, 2005. **It is admitted in the Grand Jury Transcripts on Dec. 20, 2005 that they had been in the computers, with a computer expert , and proof of a printout shows intrusion into the computers on or before 12/12/2005, nine days prior to the issuance of the warrant. The search is thus void.**

17) Proof of a Franks Hearing was found by the Court of Appeals, and due this Petitioner.

18) The following page states the Solicitor General waived the response Brief, **thus the Government does not contest the facts given them, and may not do so now.**

RECEIVED

OCT 1 4 2010

OFFICE OF THE CLERK
SUPREME COURT, U.S.

**UNITED STATES DISTRICT COURT**
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAM J. NEALON FEDERAL BLDG. & U.S. COURTHOUSE
235 N. WASHINGTON AVE., P.O. BOX 856
SCRANTON, PA 18501-0856
*Chambers_of_Judge_Edwin_M._Kosik@pamd.uscourts.gov*

EDWIN M. KOSIK
JUDGE

TEL. (570) 207-5730
FAX (570) 207-5739

May 7, 2010

*Via First-Class Mail and CM/ECF*

Michael Curtis Reynolds
Reg. No. 10671-023
USP-Allenwood
P.O. Box 3000
White Deer, PA 17887

Re:    <u>M.D. Pa. Case Nos. 05-CR-0493, No. 09-CV-1109</u>

Dear Michael,

I have your most recent filing under Federal Rule of Civil Procedure 60(d) for an act of fraud upon the court; dealing, of course, with your criminal case.

Rule 60 provides for relief in a civil proceeding. It is not an appropriate vehicle for your attempt to vacate a criminal conviction.

It may be inappropriate for me to tell you that <u>you are where you are because you think you know everything.</u> I never believed you were a bad person. You had a nice wife and a child or children. It is an asset you should try to regain if it has been lost.

The only positive thing about your filing is your address. I am surprised the Bureau of Prisons has you so designated. You must know that the recent rulings in the Third Circuit in your case on January 25, 2010, was your basis for any further appeal.

*[handwritten: not because of guilt, but because refusal to plea!]*

Sincerely,

Edwin M. Kosik
United States District Judge

**UNITED STATES DISTRICT COURT**
MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAM J. NEALON FEDERAL BLDG. & U.S. COURTHOUSE
235 N. WASHINGTON AVE., P.O. BOX 856
SCRANTON, PA 18501-0856
*Chambers_of_Judge_Edwin_M._Kosik@pamd.uscourts.gov*

*Page 30*

EDWIN M. KOSIK
JUDGE

TEL. (570) 207-5730
FAX (570) 207-5739

June 21, 2010

*Via First-Class Mail and CM/ECF*

Michael Curtis Reynolds
Reg. No. 10671-023
USP-Allenwood
P.O. Box 3000
White Deer, PA 17887

Re:    <u>M.D. Pa. Case Nos. 05-CR-0493, No. 09-CV-1109</u>

Dear Michael,

I have your letter expressing your desire to have your mother's testimony taken, which will reflect on whether there was a hand grenade. *?? Reasonable doubt?*

I have reviewed your file, and although there was one charge dealing with a hand grenade or explosive grenade, your initial sentence of 180 months on each of counts 1 and 2 for a total of 360 months, the other sentences, while independently imposed, were to run concurrently with the 360 month sentence. Accordingly, they have no independent impact.

Sincerely,

Edwin M. Kosik
United States District Judge

**Exhibit 12**



05/16/2007

## Accused suitable for terror trial?

BY ERIN L. NISSLEY
STAFF WRITER

A former Wilkes-Barre man accused of trying to aid al-Qaida will go to trial at the end of the month, though he was warned to behave or face watching the proceedings from a courthouse jail cell.

Michael Curtis Reynolds, 48, was in court Tuesday with his attorney, Joseph A. O'Brien, for a hearing to make sure everything was in order for trial May 29.

Mr. Reynolds, being held at Lackawanna County Prison, is accused of communicating via the Internet with someone he believed was a member of al-Qaida, according to an indictment handed down last year.

Mr. Reynolds allegedly offered to help commit acts of terrorism by "identifying targets, planning terrorism attacks, describe bomb-making methods, among other services," the indictment reads, targeting pipeline systems and energy facilities in the U.S.

U.S. District Judge Edwin M. Kosik again reminded Mr. Reynolds to behave during the upcoming trial, expected to last 10 to 14 days.

A video camera placed in the courtroom will broadcast trial proceedings on a closed-circuit television if Mr. Reynolds is removed. In the past, Mr. Reynolds has disrupted proceedings, accusing Assistant U.S. Attorney John Gurganus Jr. of committing perjury and making false statements while obtaining the indictment against him.

He's also attempted to fire his attorney and represent himself, which Judge Kosik has not allowed him to do.

After the hearing, the judge asked Mr. Reynolds if he had a suit for the trial. Mr. Reynolds said he has not been allowed to receive clothing or other items at the prison, nor has he been allowed to make phone calls to his mother in New York.

The judge asked the U.S. Marshals to look into that and assured Mr. Reynolds that he would have a suit for trial, "even if the government had to pay for it."

Contact the writer: enissley@timesshamrock.com

©The Times-Tribune 2007

Failure to Cross Examine perjury witness.
Failure to argue rebbuttal witness perjury.
Failure to argue Speedy Trial Violation.

Proof of _all_ will be provided at hearing and, since Judicial Admissions can be used as prior statements for impeachment purposes and both PA State Rule § 4014 Admitted Facts and Rule 56 undenied documents and Affidavits can$ be applied in other civil cases, which § 2255 motions are, Government Respondent may not deny claims or will be subject to FREvid § 201 (d) _mandatory_ acceptance of facts and (e) hearing on _all_ evidence denied.

Since the US Attorneys Office, in their own investigation into the False Arrest lawsuit found illegalities, thus _refused_ to defend Affiant Larry Whitehead and Agent Joseph Noone, guilt was found.

Other evidence awaits copying here and new Rule 36 Motions were filed to _this_ matter, thus _directly_ _conclusive_ and _binding_. Upon receipt of all, this Court will be updated. We also know of Judge Kosik's witness tampering, (we have a prosecution witness testifying and the Judge's own admission), and obstruction of Justice.

These are the issues,

Sincerely,

_Michael Curtis Reynolds_

Exhibits Explained.

Exhibit for:

**Page**

**1** Counselor O'Brien's admission to Prosecution's knowledge of use of a perjured Affidavit of Probable Cause on Sept 26, 2006. Prior to new indictment.

**2-3** Pa State False Arrest lawsuit admissions of fact, used under §1738, to show multiple perjuries and violated Search Warrant.

**4-5** Search Warrant, issued 12/21/2005 and violation proof on 12/12/2005, nine days _prior_ to issue date.

**6-8** Testimony of known dead grenade, used as _sole_ arrest count Dec 5, 2005. FBI knew device not to be illegal, it never functioned. Sgt Cody Bergen's April 23, 2005 statement of non-functionality, (note fax date of Dec 5, 2005 12:00, prior to Joseph Noones testimony Dec 20, 2005 stating, "it was detonated." Sgt Cody Bergen's trial testimony device was known never 'live' since Apr 2005. Arrest was Dec 5, 2005.

**9-16** Affidavit of Probable Cause; Note #1, statement of 'explosive device rigged to garage door.'; (pg 10): note the Grand Jury deemed it 'relevant', thus material fact to _all_ counts; (pg 11-12): actual charge (note _no_ explosive and _no_ door trigger)(note 3yr Probation, done in 1 yr);

(pg 13): false statement of 'prior booby trap'; (pg 14-16): Joyce Reynolds, sole eyewitness testimony, deathbed statement blocked by Judge Kosik, of no bomb, no door trigger, no death threat in Probable Cause material statement used to indict, arrest and to convict; (pg 9): #2 statement, by Affiant Larry Whitebread, of witness Kevin Reardon's #2 veracity statement, to 'lock change'; #3, Barbara Janick told Larry Whitehead two hours prior to Affidavit Creation, Dec 5, 2005, lock change: That that was never done. Larry admitted at trial to knowledge.

(pg 17): Venue charge is use of desktop computer while in the Middle District of Pa; note statement of 14 mile trip to use monitor one time only! ; (pg 18): emails from Pa and Ny 'sent' by Petitioner, (note Opinion 00-3210, Judge Rendell admits fact of no computer monitor while in Pa and Ny); (pg 19): Prosecution witness Debra Reardon's Affidavit of no internet use while in Ny, no monitor prior to Nov 23, 2005 and no use of alternate internet; (pg 20): Debra Reardon restates Ny, Nov 23, 2005, buying a computer monitor. (Joseph OBrien failed to point out it was not replacement monitor, but the only means to send emails. Charge is Nov 10-16, 2005 in Pa for venue issue); (pg 21): Grand Jury testimony of Joseph Noone, FBI, stating 'email' traced to 346 Scott Street; (pg 22); FBI statement of this