IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL CURTIS REYNOLDS,                    CASE No. #05-cr-0493

            PETITIONER,
                                            **FILED**
        V.                                  **SCRANTON**

UNITED STATES OF AMERICA,
                                            MAY 27 2026
            DEFENDANTS.

------------------------------------------------------------
SUPPLEMENTAL MOTION TO 18 U.S.C. §3882 MOTION ~~PER~~ DEPUTY CLERK
BASED UPON NEW INTERVENING LAW UNDER CONCEPCION
------------------------------------------------------------

INTHAT, under Concepcion,597 U.S. 481, 494 (2022), during a Motion for Compassionate Release, [which this is one], under §3582, the Court may consider intervening caselaw, specifically if it creates a disparity issue, where, if the Petitioner were to be sentenced today, the sentence would be shorter. In the Ullah, (2nd Cir. 2026)(cite on accompanying page), it was held that this Circuit's decision in Bahnasawy, 2026 U.S. Dist. LEXIS 10503 (3rd.) was incorrect. It was held in Ullah that to be charged and convicted under 18 U.S.C. §2339B, that 'personnel' must be under the :
                    'direction and control,'
of an FTO. [Note the conjunctive use of 'and' meaning that both must be satisfied to qualify]. "WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 829 (1986). If Congress had intended the two clauses to merely compliment each other orprovide analogous, additional possible definitions, it would have used the conjunctive 'and.' which is defined as a function word to indicate connection or addition.' Id. at 84."

The last sentence in the paragraph of 18 U.S.C. §2339B, on the (h) 'personnel' definition reads:

    "Individuals who act entirely independently of the foreign
    terrorist organization to advance its goals or objectives

    SHALL NOT BE CONSIDERED TO BE WORKING UNDER THE FOREIGN
    TERRORIST'S ORGANIZATION'S DIRECTION AND CONTROL." §2339B(h).

Menasche, 348 U.S. 528, 539 (1955) clarifies any confusion on the topic of 'Congressional Intent," by stating; " It is our duty, [Court's], 'to give effect, if possible, to every clause and word of a statute.'" Montclair v. Ramsdell,107 U.S. 147, 152 (1883). Therefore Congress fully intended that both DIRECTION and CONTROL are essential elements to be proven by the Government in order for a conviction under §2339B(h).

<u>Ullah</u>, (Case No. 21-1058)(April, 2026 2nd Cir.);

As a matter of ordinary meaning, a person cannot "work under [ISIS's] direction or control" if he is acting alone, and if ISIS does not know he exists, has no expectation he will hear ISIS's messages or act on them, and will not know, or care, or have any recourse if he ignores the message completely. To hold otherwise would stretch the meaning of the phrase "under [the] direction or control" beyond its breaking point. That Defendant subjectively conceived of himself as a soldier of ISIS does not establish that ISIS did, in fact, control or direct his actions. *See, e.g.,* Restatement (Second) of Agency § 221 cmt. a ("One does not become a servant by believing that he is one and intending to render service as one.").

To the extent dictionaries can illuminate the common understanding of what the statute means by working "under th[e] terrorist organization's direction or control," they support this common-sense reading of §2339B(h).

---

<u>Humanitarian Law Project</u>, 561 U.S. 1, 26 (2010);

``No person may be prosecuted under [ 2339B] in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's **direction** or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's **direction** and control." 2339B(h).

Retroactive misjoinder occurs where the joinder of charges in one trial "was proper initially because of a conspiracy allegation, but where later developments, such as [a] . . . court's decision . . . to set aside a defendant's conspiracy conviction, appear to render the initial joinder improper." United States v. Mubayyid, 658 F.3d 35, 72 n.39 (1st Cir. 2011) (quoting United States v. Deitz, 577 F.3d 672, 693 (6th Cir. 2009)). To prevail on a retroactive misjoinder claim based on prejudicial spillover, the defendant must "show prejudice so pervasive that a miscarriage of justice looms." Abdelaziz, 68 F.4th at 61 (quoting United States v. Correia, 55 F.4th 12, 36-37 (1st Cir. 2022)). In Abdelaziz, to evaluate prejudice, we considered whether the evidentiary spillover from the prejudicial variance of the separate conspiracy counts related to a "key issue" of the standalone count,{2025 U.S. App. LEXIS 66} as well as whether the jury returned a "discriminating verdict." See id. at 61 (quoting Correia, 55 F.4th at 38). We also applied a three-part test asking:

> (1) whether the evidence introduced in support of the **vacated count** 'was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts,' (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong.Id. at 62 (quoting United States v. Hamilton, 334 F.3d 170, 182 (2d Cir. 2003)).

---

As we already know, Count 3, 18 U.S.C. §373(a) was never valid, since this Petitioner has no allegations under the 'force' or 'elements' clause, a requirement of the predicate crime for support of §373(a). Therefore, we have no legitimate 'conspiracy' charge in this matter, and this bars any mention of any 'conspiracy' in any context in this case, that being an unproven claim. We will now address the three questions above:

(1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaning counts;

Since not only our 'conspiracy' count, but the 'teaching' Count 4, 18 U.S.C. §842(p)(2), was vacated for being voided by Dimaya, (2018), because its predicate required a 'crime of violence,' that Petitioner does not have. [All allegations fell under the voided and rendered Unconstitutional 18 U.S.C. §16(b). Thus we have no 'conspiracy' nor do we have any 'teaching,' thus we have no predicates in this matter....absent the 'conspiracy' and the 'teaching' allegations to the FTO, you have no criminal acts. However, the Court cannot claim that statements of 'conspiracy' and 'teaching' of an FTO deid not influence the verdict...

IT WAS THE ENTIRE VERDICT.

(2) whether the dismissed count, [or vacated] and the remaining counts were similar,and;

Counts Two, Three and Four are nearly identical being Attempted Arson Offenses, all with the same claim to 'interstate pipeline damage,' and Count One uses Counts Two, Three and Four as its perdicate acts. Thus 2 out of 3 Counts are void, and the Court cannot say without doubt that one of these two vacated Counts was what swung the jury's verdict or not.

(3) whether the Government's evidence on the remaining Counts was weak or strong;

The evidence is now questionable under the Ullah, (April 30, 2026), whether the conviction is valid, and since it obtains it definition of 'service' from 18 U.S.C. §2339A, our Count Two, then that also is an issue, since Count Two may not be valid since there is no such crime today as Attempted Federal Arson, as it, as are all Arson, holding that it has a RECKLESS mens rea, thus constitutes a non-existant, legally impossible

OFFENSE OF ATTEMPTED RECKLESSNESS.

Clearly the Government's "evidence" is not strong in this matter. However, we are not here to discuus 'convictions,' we are here to repair the sentence, which violates Apprendi.

Therefore, this being a sentencing correction issue, and using, Concepcion, we can and will apply Taylor, and Ullah, as they clearly impact this sentence before the Court. That does not make it a 28 U.S.C. §2255 issue, it makes this a 18 U.S.C. §3582 CRIMINAL ISSUE.

This Court may not argue that by Dimaya, (2018) that our Count 4, 18 U.S.C. §842(p)(2) is invalid, as we have no required 'predicate' offense of any 'crime of violence.' They just do not exist in this case. Equally, this Court may not ignore that Count Three, 18 U.S.C. §373(a) offense has been void since inception, since this Petitioner never had any 'offense that has as an element the use, attempted use, or threatened use of physical force...against the person or property of another.'

Boney, 769 F.3d 153, [LEXIS Pg. 21] (3rd Cir. 2014);

See United States v. Amawi, 695 F.3d 457, 496 (6th Cir. 2012). And a "crime of violence" in § 373(a) is limited to **a felony "that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another**." Dimaya left intact the identical definition of "crime of violence" in § 16(a). See In re Amawi, 780 F. App'x 301, 303 (6th Cir. 2019).

Reynolds, 2024 US App. LEXIS 23189 (3rd.);

Specifically, he was convicted of (1) attempt to provide material support and resources to a foreign terrorist organization, see 18 U.S.C. § 2339B; (2) attempt to provide material support and resources to damage or destroy property used in commerce by means of fire or explosive, and to damage or attempt to damage an interstate gas pipeline, see 18 U.S.C. § 2339A; (3) solicitation or inducement of another to damage or destroy property used in commerce by means of fire or explosive, and to damage or attempt to damage an interstate gas pipeline, see 18 U.S.C. § 373; (4) **distribution through the internet of information demonstrating the making or use of an explosive or destructive device, with the intent that the information be used to commit a federal crime of violence, see 18 U.S.C. § 842(p)(2)**); and (5) possession of an unregistered destructive device (a hand grenade), see 26 U.S.C. § 5861(d).

## 2. Services

Defendant next challenges the Court's instruction regarding the providing of "services" in support of a terrorist organization. The Court instructed the jury that:

> A person provides or attempts to provide services as that term is defined in the statute when a person performs work commanded or paid for by another or done for the benefit of another, here ISIS.

> Only work performed in coordination with, at the direction of, or for the benefit of ISIS meets the definition of service. It's for you to decide whether or not the government has proven beyond a reasonable doubt that ISIS invited conduct such as the conduct alleged here, whether the defendant carried out the conduct alleged here, and, if you find that he did, whether the defendant was motivated by such an invitation.

> If you find that ISIS did in fact invite its followers or sympathizers to engage in such conduct and if you find{2020 U.S. Dist. LEXIS 12} that the defendant engaged in conduct that was motivated in whole or in part by such an invitation, that would be sufficient to meet the definition of services in the statute.(Mem. at 10 (quoting Tr. 924:24-925:15) (emphasis omitted).)

Defendant argues that, under *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010), a "service" must be performed "in coordination with or under the direction of" ISIS, and that the Court's instruction improperly permitted the jury to convict Defendant on the basis of an "entirely independent act undertaken" to advance ISIS's goals and objectives. (Mem. at 4, 10-11; Reply at 2.) But while the Supreme Court in *Holder* recognized that the term "service" includes "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization" and excludes "independent advocacy," 561 U.S. at 24

Chan, 2016 U.S. Banker LEXIS 3690 (3rd Dist. 2016);

"concerted" means "arranged by mutual agreement; agreed upon, pre-arranged; planned, contrived; done in concert;" and "concert" means an "agreement of two or more persons or parties in a plan, design, or enterprise; union formed by such mutual agreement." Oxford English Dictionary 764 (1st ed. 1933); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 132 S. Ct. 1997, 2003, 182 L. Ed. 2d 903 (2012) (commenting that the Oxford English Dictionary is "one of the most authoritative on the English language"); *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) ("We frequently look to dictionaries to determine the plain meaning of words, and in particular we look at how a phrase was defined at the time the statute was drafted and enacted."). And the Oxford English Dictionary defines "activity" as "the state of being active; the exertion of energy, action." Oxford English Dictionary 95 (1st ed. 1933). The understanding and meaning of "concerted" remains unchanged today. The current edition of the Oxford American Dictionary **defines** "concerted" as "jointly arranged, planned, or carried out; **coordinated**." New Oxford American Dictionary 359 (3d ed. 2010). Finally, Black's Law Dictionary defines "concerted activity" as "action by employees concerning wages or working conditions; esp., a conscious commitment to a common scheme designed to achieve an objective." Black's Law Dictionary (10th ed. 2014.)

There are two sections to the material support statute §2339B, either 'personnel' or 'services'. Addressing 'personnel' first (since no 'service' was rendered, We find the legal flaw in the <u>Bahnasawy</u> decision, which becomes obvious shortly. Our District focused upon §2339B(h) which states:

"No person may be prosecuted under [§2339B] in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals [who may be or include himself] to work under the terrorist organization's <u>direction or control</u>. Or to organize, manage, supervise, or otherwise direct the organization." [1]

~~to advance~~ operation of that

what the did is warned about in the <u>Tatis</u>, 862 F.3d 422, 429 (3rd Cir 2017),

(quoting Disabled in Action, 539 F.3d 199, 210 (3rd Cir. 2008):

(noting the Court "assumes...that every word in a statute has meaning and avoid[s] interpreting one part of a statute in a manner that renders another part superfluous.").

This follows Menasche, 348 U.S. 528, 539 (1955);
"It is our duty [court's] "to give effect, if possible, to every clause and word of a statute." Montclair v Ramsdell, 107 U.S. 147, 152 (1883).

Our Court ignored Congress' express intent in the final sentence of the §2339B (h) statute paragraph, which clearly states:

"Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under

the foreign terrorists organization's
direction and control."

Now, in our matters we had a
Government Judge, Shannen Rossmiller,
whom posed as a Foreign Terrorist
Organization member. Since the Court
cannot claim, by its own Record at
Trial that Petitioner "directed and
controlled" Shannen Rossmiller, then
she "directed and controlled" this
Petitioner. The conjunctive "and" was
purposely stated by Congress when
this statute was created —
     and never questioned since.

"Webster's Ninth New Collegiate
     Dictionary 829 (1986). If Congress
     intended the two clauses to merely
     compliment each other or provide
     analogous, additional possible
     definitions, it would have used
     the conjunctive "and" which is
     defined as a function word to
     indicate connection or addition."
     Id. at 84."

Congress clearly listed in §2339B(n) in the first portion of the statute, the <u>means</u> to be considered in an <u>assessment</u>, hence their choice of the conjunctive term 'and'.

<u>LeGendre</u>, 2023 US Dist LEXIS 34628 (5th):

> "<u>Comparing</u> the statute's use of "or" between the offenses (robbery, <u>or</u> attempts <u>or</u> conspires to do so) within its use of "or" within the list of means demonstrates that [the crime] provides for different offenses,
>
> each with an alternate <u>means</u> to commit them."

<u>Greene v Bean</u>, 2025 US Dist LEXIS 27021 [LEXIS Pg 56] (4th), stating:

> "The use of the conjunctive 'and' <u>crystallizes that the elements are separate and</u> —
> Each one is required to support a verdict..."

"The conjunctive use of the word
'and' indicates that —

Each aspect must be satisfied."

So, Congress intentionally listed in
the first portion of statute § 2339B(h)
the means to commit the crime, but
in the last sentence Congress intentionally
crystallized which elements, both elements
that must be proven to convict:

"Individuals who act entirely
independently of the foreign
terrorist organization to
advance its goals or objectives
shall not be considered to
be working under

the foreign terrorist organization's
direction and control."

Government did not prove, nor was
it found by Special Jury Verdict that
Petitioner "worked under [Shannen
Rossmiller's] direction and control.

How do we know this? It is found on Court Trial Transcripts, and has been discussed but not heard on at any Hearings, the fact stated by Joseph Noone, FBI Agent herein, of:

"He told me the 'target' was the Standard Oil Company, Perth Amboy, NJ. He did not say this, but it is near the New Jersey Turnpike."

(Which of course, in Pittston v Alliance, was proven false; Standard Oil Company had no operations in Perth Amboy, NJ since 1911; equiptment was removed in 1932; Pittston sold that owned, abandoned property to Allianz, whom in 1985 removed the last of any trace of the former "Standard Oil Company" equiptment off the vacated lot. There was no operating "Standard Oil Company" near the New Jersey Turnpike in 2005. In fact there was no way the



Petitioner could have even guessed in 2005 that anything had existed there.

It was observed by a Scranton News Times Reporter, printed in that paper, that she personally drove to this former site and—

saw an empty lot with weeds. Being a publicized fact, Judicial Notice is requested thus mandated under F.R. Evid § 201 (c)(2). It is not discretionary.

"So, our 'fact' is a 'target' of the Standard Oil Company, Perth Amboy, NJ." To convict for the 'personnel' portion of §2339B (b), Government had to prove—

(1) Shannen Rossmiller - (our foreign terrorist organization) directed a strike, by physical document records, (since Shannen Rossmiller died, we cannot question, nor cross-examine testimonial evidence) of Shannen Rossmiller's —

"Direction and Control" of Petitioner to do said 'target,'

or the conviction is void by Statute and the holding in Ullah,

Therefore, intervening new law would vacate Count Two, which would have been voided anyhow since no Federal crime of Attempted Arson would be legal today.

To touch on another 'means' in that statute §2339B(h), Petitioner's Count Three was invalid since Indictment, because Petitioner never had any 'force' or 'element clause' predicates to support the requirement Congress intentionally made crystal clear in that §373(a) statute, thus no 'conspiracy' charge or statement is valid. Thus, under 'personnel' it could only convict if Petitioner himself was directed and controlled both by Shannen Rossmiller. There is no physical proof

in our record and (conjunctive usage herein) the Government cannot produce any evidence of 'direction and control' by Shannen Rossmiller. Count One thus fails, §2339B.

Count Two, Three and Four would fail, as they are "Attempted Federal Arsons" a charge which is rendered legally impossible to commit, all Circuits accepting that all Federal Arsons are reckless mens rea offenses.

In any case, Count Three was always invalid, Count Four was invalidated in 2018 retroactively by Dimaya (there being no predicates of 'crime of violence' in any Petitioner allegations, Congressionally intended by statute in order to Convict.

So, any argument that §2339B convicted under the 'personnel' aspect fails. This would leave only the 'service' definition as a possibility to retain this conviction.



<u>Abu-Jihaad</u>, 600 F. Supp. 2d 362 (2nd Dist 2009) [pg 401];

"That is, merely providing an organization with a resource, even a prohibited resource, is not necessarily the same thing as providing personnel to prepare for or carry out the prohibited purposes of the statute through-

Some form of coordinated or joint action."

"Instead the Court found that 'independent advocacy' did not fall within 'service' under §2339B(b), because the term 'service' refers to concerted activity, (Humanitarian Law Project 561 US 1, 23-25 (2010), (citing to Webster's Third New International Dictionary 2075 (1993)). 'On the other hand, a person of ordinary intelligence would understand the term 'service'

to cover advocacy performed in

coordination with, or at the direction of, a FTO." Id at 24.

So, Government would have to prove, by Court Record or documentation that Shannen Rossmiller 'coordinated with, or [gave] direction to Petitioner to, as Joseph Noone stated as a fact.

*¹ "target"⁴ the Standard Oil Company of Perth Amboy, NJ" a non-existant place.

Now, if Government claims that the 'service' is "training of an FTO by use of the Internet" they have issues, legal issues since that charge, Count four, 18 USC § 842 (p)(2) was voided by Dimaya, which applies retroactively, Thus they cannot apply the content

of the vacated Count as meeting
the elemental requirement of 'service'
in Count One.

So, since the Court cannot assure
that its verdict would not have been
impacted had our void Counts 3 + 4
been absent at Trial, seeing as the
"Conspiracy" of §373(a) tended to
satisfy, incorrectly, Count One, §2339B's
element of 'coordination' or 'cooperation'
with an FTO, and Count Four's 18 USC
§842(p)(2) would, logically lead one
to consider it as 'service' to 'train',
(yet another means in §2339B), That
between those two — the only predicate
acts charged in this Indictment, the
jury would not have convicted our, now
questionable, lacking Count One, §2339B
conviction.

But, under §3582(c), we aren't here
to discuss legalities, only the disparity
caused by the legislative impact of
Ullah upon our case. What it does is
open argument that, beyond the fact
Judge Kosik held no authority to issue

his 360 month sentence, per Apprendi our Statutory Maximum Term never changed from Count Four, 18 USC §842 (p)(2), 240 months, which is now being violated. If no charges changed by law, the 240 month term would still be applicable today and we would still be in a disparity issue –

a sentence 150% over the Statutory Maximum Term.

However, at a minimum, if sentenced today, knowing Counts 3 & 4 were in fact vacated by Dimaya in 2018, a point this Court may not argue, it caused our Statutory Maximum Term to drop to Count Two, §2339A, 180 months.

a sentence 200% over that Statutory Maximum Term.

A clear, undeniable disparity issue. Since we began with using Concepcion herein, (although unneeded for our Dimaya – granted retroactivity), it allows viewing how Ullah now would

impact our sentence. Under Apprendi (2000) we do not even argue its direct power over this sentence. But, as this Brief demonstrates, we have a clear sentencing disparity, §3582, not §2255 issue before us. If sentenced today, Petitioner could never have received more than a 180 month Sentence.

At present, and absent any use of Concepcion, we are over 65 months or 31% above Petitioner's legal Statutory Maximum Term. This one fact must be corrected via §3582.

Judge Kosik held no authority, per Apprendi to issue his 360 month term. This Court then holds no authority to enforce a sentence which violates Apprendi".

The Sentence Packaging Doctrine, which should have been applied in remand of our vacated Counts 3 & 4 still must be applied to this legal correction, §3582 is the proper motion to raise this claim. Ullah, by law must be presented before DC in this way.

CONCLUSIONS:

1)    That Count Three, 18 U.S.C. §373(a) is void,was vacated in 2018.

2)    That Count Four, 18 U.S.C. §842(p)(2) is invalid was vacated in 2018.

3)    That, absent the Count Three, 'conspiracy' charge, and the Count Four 'teaching charge,' the matter must be subject to the Sentencing Package Doctrine, and a Full Resentencing Hearing held.

4)    The 360-LIFE Sentencing Range was not within any Judicial Authority to issue, and beyond any Judicial Authority to enforce, under Apprendi, this must be corrected.

5)    Since new, intervening laws are debated, when they impact sentencing under 18 U.S.C. §3582(c), and Concepcion allows that usage, then Ullah opens the argument that Count One may have been invalidated.

6)    Bottom line, with or without Ullah, a Sentencing Package Doctrine, Full Resentencing Hearing has been required in this case since 2018, and must be held. We have no predicate 'crimes' that are legal since that date, they are interrelated, were grouped under §3D1.2, then sentenced under §2K1.4, the Federal Arson Statute, as one charge. You cannot vacate two counts and not do a Full Resentence Hearing.

I, Michael Curtis Reynolds hereby certify under penalty of perjury pursuant to Title 28 U.S.C. §1746 the above as true and correct.

5/ 14 /2026
Dated :

_Michael Curtis Reynolds_
Signature

